## Ex parte Myra Clarke Whitney.

The district judge of the eastern district of Louisiana, while holding a Circuit Court, ordered proceedings on a bill in equity to be in conformity with the rules of the Courts of Louisiana, thus disregarding the rules for proceedings in the Circuit Courts of the United States in cases in Chancery, prescribed, and ordered by the Supreme Court of the United States. It was also declared that the practice and proceedings in all civil causes, those of admiralty alone excepted, should be conformable to the provisions of the Code of Practice of Louisiana, and of the acts of the legislature of the state. Under this order, and by the course of the Court, the proceedings on the bill in equity were suspended and prevented. A motion was made for a mandamus to the Circuit Court, in the nature of a writ of procedendo, to compel the Court to proceed in the cause according to the rules of practice prescribed to the Courts of equity of the United States, &c., to award attachments, &c., and in all things to proceed in the cause in such manner as the Constitution and laws of the United States, and the principles and usages in equity will authorize. Held, that this is not a case in which a mandamus will lie. The appropriate redress, if any, is to be obtained after the final decision shall be had on the cause, by appeal.

A writ of mandamus is not the appropriate remedy for any errors which may be made in a cause, by a judge in the exercise of his authority; although they may seem to bear harshly or oppressively on the party. The remedy in such cases must be sought in some other form.

MR. JONES presented a petition, and moved the Court for a mandamus in the nature of a writ of procedendo, to be directed to the Circuit Court of the United States, for the eastern district of Louisiana.

Mr. Jones, for petitioner, stated, that William W. Whitney, and Myra Clarke Whitney, had filed a bill in the District Court of the United States for the eastern district of Louisiana, which was afterwards transferred to the Circuit Court. The complainant, William W. Whitney, having died pendente lite, the suit was continued in the name of his widow, Myra Clarke Whitney.

The subpœna issued on the bill was served on a number of defendants, and among them on Relf and Chew. The object of the bill is to recover property devised to the complainant by a will of Daniel Clarke, in which the complainant, his only child, and heir at law, was his general legatee; and Relf and Chew are charged in the bill with having fraudulently concealed and suppressed this will, and having set up a prior and revoked will, in which they are named executors, with plenary powers of disposal and sale over the real estate of the testator; and they had disposed of the immense estate, under colour of their office and authority, as executors and testamentary legatees; whilst the complainant for a time, an infant of tender years, was in ignorance of her parentage and true name, and of his rights. The other defendants are charged with combining with Chew and Relf; and with having purchased, and withholding parts of the estate of Daniel Clarke, under sales by Chew and Relf.

The bill he stated set out a case for the relief of a Court of

equity, seeking special and general relief, according to the principles and course of procedure of a Court of equity. A copy of th bill for each and every of the defendants, about fifty in number, was served with the subpœnas.

On the 20th February, 1837, (about two months after the subpœnas were returned, served,) the two executors, with twenty-five of their co-defendants, appeared by their respective solicitors, and filed a petition; wherein, stiling themselves respondents, eleven of them say French is their "mother tongue;" not that they do not understand English as well, and pray, as a precedent condition to their being held to plead, answer, or demur to the bill, that a copy, in their "maternal language," be served on each and every of them, severally, over and above the English copies already served. Then, "all the aforesaid respondents (including of course the two executors,) here appearing separately by their respective solicitors, crave oyer" of all the instruments and papers of every sort mentioned in the bill; but, "if it be not possible for said complainants to afford these respondents oyer of the originals of said supposed instruments, they then pray that copies of the same, duly certified according to the laws of the state of Louisiana, may, by order of this honourable Court, to said complainants, be filed herein, and served on these respondents, that they may be enabled to take proper cognizance thereof." The respondents, more especially, crave oyer of twenty-three of these instruments enumerated and specified in a list; referring to the several clauses of the bill where they are respectively mentioned.

The late Judge Harper, formerly judge of the District Court of the United States for the eastern district of Louisiana, "decreed that the application of the defendants for oyer of the documents and for copies of the bill in the manner prayed for, be granted;" and he ordered, "that all the future proceedings in the case shall be in conformity with the existing practice of the District Court."

The petitioner, by Mr. Jones, her counsel, stated that the order so granting the prayers of the petition, in extenso, has ever since stood a bar against the entrance of the complainant beyond the threshold of justice; the regular progress of the cause to issue has been arrested, and a hearing indefinitely delayed; unless the precedent condition, thus arbitrarily and illegally imposed, of a compliance with all and singular the requisitions of the respondents in their petition, be fulfilled to the last tittle.

As if this were not a sufficiently distinct and emphatic renunciation of the jurisdiction, as well as of the forms and modes of proceeding appropriate to Courts of equity, the further order, determining "all future proceedings in the case," is completely tantamount to an unqualified conversion of the case into a suit at law; since "the existing practice" referred to, is no other than a set of rules exclusively adapted to "suits at law as contradistinguished from equity causes."

The death of Judge Harper occurred between the time of passing this order, and the then ensuing May term, 1837, of his Cour ; so that no opportunity was presented of bringing the practical effect

and operation of his order to the test of any motion before him to enforce the course of procedure prescribed by this Court, upon the failure of the defendants to answer within three months after return of subpœnas served. But that test was presented to his successor, Judge Lawrence, at that term, when the time allowed for answers had expired more than two months, without any plea, answer or demurrer from any of the defendants; and when the option of one of the three modes, prescribed by this Court as aforesaid, was complete in the complainants, and the right to exercise it absolute. The complainant then, by way of experiment, moved for an attachment for answer against the said Richard Relf, one of the defendants returned duly summoned, which motion the judge virtually overruled; that is, he refused to pass any order, or take the least notice of it during that term. Before the next ensuing session of the District Court, its jurisdiction as a Circuit Court was taken away; and, together with all the causes then pending within the sphere of that jurisdiction, was transferred to the new created Circuit Court for the same district. At the first session of that Court, held by Judge Lawrence alone, in the absence of the circuit judge, the motion for attachment was again pressed; and the judge not only refused to grant it, but resisted repeated applications from the complainant's solicitor to have the motion and his refusal of it recorded among the proceedings of the Court; he refused to permit any notice whatever to be taken of the matter in the minutes or proceedings of the Court. The clerk thought it his official duty, sua sponte, to make the proper entries in his minutes of the proceedings; but on application to the judge was refused permission.

Judge Lawrence, at the same term of the Circuit Court, upon his sole authority, in the absence of the circuit judge, undertook to prescribe rules of practice for that Court; and this he did very compendiously, by a general order "that the mode of proceeding in all civil causes, (those of admiralty alone excepted,) shall be conformable to the provisions of the Code of Practice of Louisiana, and of the acts of the legislature of that state, heretofore passed amendatory thereto."

The counsel for the petitioner further alleged;

That the burdensome and oppressive exactions put forth by the respondents in their petition, could have had no other design or tendency but to evade the suit and its legitimate consequences; and to wear out and weigh down the complainant by mere vexation and chicanery, too thinly veiled behind frivolous pretexts, is quite apparent. That both the District and Circuit Courts, enforcing those exactions, have flown in the face, and abnegated the authority of the supreme tribunal expressly appointed by law to regulate their action and control their judgments, is plain and palpable. As little can the double result be questioned, of a manifest impediment to the course of public justice, coupled with wrong and oppression to the individual who now claims, at the hands of this Court, redress at once of the private and the public wrong, by the vindication

and maintenance of the cause of public justice violated, as it is, in her person.

Mr. Jones further contended, in support of the motion, that if this Court have an appellate jurisdiction over the proceedings of the Circuit Court of Louisiana, they may interpose by a mandamus to have done what the Court has a right to correct by a writ of mandamus. This may be done in a case pending, although the Court will not originate a case by a mandamus. Cited Marbury vs. Madison, 1 Cranch.

This Court will proceed by a mandamus, when it is necessary to interpose for the exercise of the appellate power of the Court, and when there are no other remedies. The issue of a writ of habeas corpus is on the ground that in no other manner in the case could the appellate power of the Court be exercised.

The act of Congress refers to the usages which are derived from the common law; and at common law a mandamus lies to enforce judicial acts, and to correct judicial errors in inferior Courts.

A mandamus, and a writ of procedendo differ very little, and are both to enforce the proceedings of Courts. Cited 3 Black Com. 109, 5 Comyn's Dig. 91. As to the difference between judicial and ministerial acts by a Court, the counsel cited 5 Comyn's Dig. 34. 5 Term Rep. 549.

There is an obvious necessity for a remedy in this case. The proceedings of the Circuit Court of Louisiana are entirely suspended; and by a palpable and flagrant violation of the rules of the Court in chancery cases, as prescribed by this Court, and to which the Circuit Court of Louisiana is bound to conform, the appellate power of the Court is defeated. The case is kept from the final decision of this Court by the entire disregard of his duties by the judge of the Circuit Court, and of rules which he is bound to enforce.

Mr. Justice STORY delivered the opinion of the Court.

This is the case of a motion made on behalf of Myra Clarke Whitney, for a mandamus to the Circuit Court of the eastern district of Louisiana. The petition on which the motion is founded states that a bill in equity is now pending in the said Circuit Court, in which the petitioner is plaintiff, against Richard Relf and others, defendants; that it is understood to be the settled determination of the district judge not to suffer chancery practice to prevail in the Circuit Court; that her right to proceed in her suit has been denied, until she shall cause copies of her bill in the French language to be served upon the defendants or some of them, and until she shall file documents, which are not made exhibits in the cause; and then that all further proceedings in the cause shall be in conformity with the existing practice of the Court, which existing practice is understood to mean the practice prevailing in the Court in civil cases generally, in disregard of the rules established by the Supreme Court to be observed in chancery cases. The prayer of the petition is for a mandamus in the nature of a writ of procedendo, to compel the

Court to proceed according to chancery practice, to award an attachment, and compel Relf to answer her bill, and to suffer the petitioner in all things to proceed in the cause in such manner as the constitution and laws of the United States, and the principles and usages in equity will authorize. A copy of the bill, and the orders and proceedings of the district judge thereon, are presented with the petition.

That it is the duty of the Circuit Court to proceed in this suit according to the rules prescribed by the Supreme Court for proceedings in equity causes at the February term thereof, A. D. 1822, can admit of no doubt. That the proceedings of the district judge, and the orders made by him in the cause, which are complained of, are not in conformity with those rules, and with chancery practice, can admit of as little doubt. But the question before us is not as to the regularity and propriety of those proceedings, but whether the case before us is one in which a mandamus ought to issue. And we are of opinion that it is not such a case. The district judge is proceeding in the cause, however irregular that proceeding may be deemed; and the appropriate redress, if any, is to be obtained by an appeal after the final decree shall be had in the cause. A writ of mandamus is not the appropriate remedy for any orders which may be made in a cause by a judge in the exercise of his authority; although they may seem to bear harshly or oppressively upon the party. The remedy in such cases must be sought in some other form.

The motion for the mandamus is therefore denied.

On petition for a mandamus or for a rule to show cause why such writ should not issue requiring the judges of the ninth judicial circuit to proceed in this cause, according to the rules of equity. On consideration of the motion made in this cause by Mr. Jones, on a prior day of the present term of this Court, to wit, on Saturday, the 26th day of January last, and of the argument of counsel thereupon had, it is now here ordered, adjudged, and decreed by this Court, that the said motion be and the same is hereby overruled.